The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
3. This action was filed with the North Carolina Industrial Commission pursuant to the provisions of the North Carolina Tort Claims Act, G.S. § 143-291 et seq., against the North Carolina Department of Transportation, which is a department of the State of North Carolina.
4. Defendant filed an Answer with the North Carolina Industrial Commission denying all allegations of negligence.
5. The incident referred to in the Affidavit occurred on 18 June 1992, at the North Carolina Department of Transportation Maintenance Yard in Durham, North Carolina.
6. The date of the alleged negligent act giving rise to this claim was 18 June 1992, at the North Carolina Department of Transportation Maintenance Yard in Durham, North Carolina.
7. The employees of the State named were Thomas Harrelson; Bill Marley; W. D. Campbell; Berry Jenkins; H. A. Moore and C. W. Ferguson, Jr.
8. This claim was filed with the North Carolina Industrial Commission on 10 May 1994.
9. A Stipulation of Damages, received 3 April 1996, is stipulated into evidence.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. On 18 June 1992, plaintiff was employed with High Rise Service Company, Inc., as a welder. High Rise Services, Inc., was owned by plaintiff's brother, Andy Simmons.
2. High Rise Services, Inc. is in the business of contract work to be provided on tanks and other storage media containing petroleum and asphalt products.
3. In the general course of plaintiff's employment, plaintiff often times encountered flammable gases and other substances. Plaintiff was trained to use equipment designed to detect the presence of flammable gases.
4. High Rise Services, Inc. contracted with the Department of Transportation to perform certain welding and metal fabrication work on asphalt storage tanks located at the Department of Transportation sites in Durham, Oxford, and Roxboro, in order to fabricate the tanks to accommodate circulation equipment. The Department of Transportation desired to change products in the tanks from RC-250 to another product requiring circulation.
5. High Rise Services, Inc. and plaintiff were experienced in working around RC-250, and were familiar with the characteristics of the product.
6. High Rise Services, Inc. through Andy Simmons, devised a plan to complete the work contemplated by the Department of Transportation. This plan did not require the tanks to be empty; however, the plan did require that the heating element in the tanks be turned off and that the tanks be left open in order to allow the product to cool to ambient temperature.
7. It was understood between the Department of Transportation and High Rise Services, Inc. that it was the Department of Transportation's responsibility to open the tanks and turn off the heating element. The product must be cooled to ambient temperature prior to High Rise Services, Inc. commencing work.
8. On 18 June 1992, plaintiff and co-worker Ricky Trump were sent to the Department of Transportation Maintenance Yard located in Durham, North Carolina, in order to perform the contracted work.
9. Upon arrival at the Durham facility, plaintiff and his co-worker, Ricky Trump, spoke with defendant's named employee, H. A. Moore. At that time, Mr. Moore indicated to plaintiff that the tank had been open and the heating element had been turned off for at least two weeks. Defendant's named employee, H. A. Moore, knew or should have known that the heat needed to be turned off and the product cooled prior to any work being performed by plaintiff.
10. H. A. Moore, defendant's named employee, also indicated to plaintiff that the tank was ready to work on.
11. Prior to beginning work on the tank, plaintiff checked the area in and around the tank for the presence of flammable vapors or gases with a gas detection instrument. Plaintiff also lowered the gas detection unit into the asphalt storage tank to a distance of approximately three feet. The gas detection device did not indicate combustible materials to be present, but did give an oxygen level reading indicating the presence of oxygen in acceptable, non-combustible quantities.
12. Relying on the statements by defendant's named employees with regard to the temperature of the tank, plaintiff concluded that it was safe to commence work.
13. Plaintiff commenced work by engaging a portaban saw to remove certain metal from the asphalt tank. When plaintiff engaged the portaban saw, a sparking of the saw's armature occurred which caused an ignition of the fumes in the tank opening where plaintiff was working, resulting in an explosion which severely burned the upper torso of plaintiff.
14. The Department of Transportation and its named State employee, Mr. H. A. Moore, was negligent in that he knew or should have known that the heating elements in the Durham tank had not been turned off, and the tank had not been left open for two weeks as called for in High Rise's contract. In addition, by failing to indicate to plaintiff the true temperature of the product contained in the Durham tank and by failing to indicate to plaintiff that the tank had a thermometer, these negligent acts were the proximate cause of plaintiff's injuries.
15. Plaintiff was not contributorily negligent for his injuries in that he checked for the presence of combustible gases with a gas detection device. Plaintiff was familiar with the proper use of the gas detection device, and he properly used the device on this occasion.
16. The reasonable value of the damages which plaintiff sustained as a result of defendant's named employee's negligence is $100,000.00.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On 18 June 1992, the negligence of defendant's named employee was the proximate cause of plaintiff's injuries. G.S. § 143-291 et seq.
2. Plaintiff was not contributorily negligent for his injuries. G.S. § 143-291 et seq.
3. Because of the negligence of defendant's named employee, the State is liable to plaintiff Edward E. Simmons for damages in the amount of $100,000.00. G.S. § 143-291 et seq.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. The State shall pay Edward E. Simmons the sum of $100,000.00.
2. The State shall also pay the costs.
This case is ORDERED REMOVED from the Full Commission docket.
 S/ ___________________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________________________ COY M. VANCE COMMISSIONER
JHB/nwm 11/14/96